IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAQUILLE HOWARD, *et al*, | Civil Action No. 2:20-cv-01389 |
| Plaintiffs, | Magistrate Judge Lisa Pupo Lenihan |
| v. | |
| LAURA WILLIAMS, Chief Deputy Warden of Healthcare Services, *et al*, | ECF No. 68 |
| Defendants. | |

**MEMORANDUM OPINION
ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Pending before the Court is Plaintiffs' Motion for Class Certification, ECF No. 68. For the reasons set forth below, said Motion will be granted and the class certified under Federal Rules of Civil Procedure 23(a) and 23(b)(2) pursuant to this Memorandum Opinion and by the separate Order entered on even date herewith.

**I. CASE AND CONCLUSION OVERVIEW**

Named Plaintiffs, being inmates of Allegheny County Jail ("ACJ"), request certification of this civil rights action against Defendants. The case is premised primarily on Defendants' policies, practices and procedures (hereafter "policies and procedures") that assertedly (a) violate rights under the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq.* (the "ADA"), the Rehabilitation Act, 29 U.S.C. §794, Pennsylvania statutory requirements such as 37 Pa. Code §95.220b, and other legally-binding

1

protections and (b) affect a putative class of mentally-compromised ACJ inmates/confinees ("inmates") by placing that class at increased risk of harm.  The proposed class is defined as: "All individuals currently or in the future incarcerated at Allegheny County Jail and who have, or will in the future have, a serious mental health diagnosis, disorder or disability as recognized in the DSM-V, including but not limited to depression, anxiety, post-traumatic stress disorder, schizophrenia, bipolar disorder, or borderline personality disorder." ECF No. 69 at 8.

In addition to the pending motion, the parties' related filings include: (a) Plaintiff's Proposed Order, ECF No. 68-1, Redacted Brief in Support and Sealed Brief with Exhibits, ECF Nos. 69 & 70, and Reply Brief, ECF No. 82, together with (b) Defendants' Brief in Opposition, ECF No. 78.

As Plaintiffs fairly note in Reply, Defendants' Brief in Opposition (a) largely focuses on the Named Plaintiffs' different lengths of time in jail and assertions that the requirements of individualized mental health treatment (*i.e.*, differentiated responses) preclude class certification, while (b) failing to adequately respond to Plaintiffs' citations to cases certifying analogous classes.  *See* ECF Nos. 78 and 82.[1]  In doing so, Defendants also fall short of

---

[1] *See also, e.g.,* ECF No. 69 at 30-32 (citing *Clark v. Lane*, 267 24 F.R.D. 180 (E.D. Pa. 2010) (certifying class of "all current and future residents of Coleman Hill," a halfway house for individuals released from DOC custody, asserting claims under the constitution, the Americans with Disabilities Act and the Rehabilitation Act for inadequate medical and mental health care); *Inmates of the Northumberland County Prison v. Reish*, 2009 U.S. Dist. LEXIS 126479 (M.D. Pa. March 17, 2009) (class of all current and future inmates, pursuing claims associated with the provision of medical and mental health care, among other claims)). *Id.* (noting that courts have also frequently certified classes of prisoners outside the mental health context) (citing, *e.g., Hassine v. Jeffes*, 846 F.2d 169, 180 (3d Cir. 1988); *Williams v. City of Phila.*, 270 F.R.D. 208, 213–14 (E.D. Pa. 2010)). *See also, e.g., Chief Goes Out v. Missoula Cnty.*, CV 12-155-M-DWM, 2013 WL 139938, at *1 (D. Mont. Jan. 10, 2013)

engaging with the core claims that Defendants' deficient policies and procedures adversely impact a cognizable class of inmates.

In other words, the case turns on the common questions of the existence and constitutionality of broadly and uniformly applicable policies and procedures governing certain inmates' confinement.  It is neither about nor precluded by the individual applications and responses made under those policies and procedures, except to the extent that they inform the establishment of said policies and procedures' existence and legality.[2] As discussed in Section II, the challenged policies and procedures are sufficiently alleged to affect a "class" of inmates placed at higher risk of harm by allegedly unconstitutional policies, and Plaintiffs have met the requirements of Rule 23(a)).  In addition, Plaintiffs have sufficiently alleged their entitlement as a class to civil rights based injunctive relief under 23(b)(2), for which the essential question is whether Defendants acted in common ("on grounds generally applicable") as to the class in ways that make injunctive relief appropriate and providable.  As discussed in Section II, Plaintiffs seek to establish harm or increased risk of harm from unlawful policies and procedures (*e.g.*, discrimination under the ADA, violations under Constitutional Amendments, and other alleged violations of legally-binding standards).

---

(certification of class of "all current and future prisoners" denied outdoor exercise and alleging constitutional violations).

[2] That is, an aggregation of instances may contribute to making out the policies and procedures, but the class action and its remedy hinge on the policies and procedures themselves.

That said, Plaintiffs' Proposed Order exceeds an appropriate scope. *See* ECF No. 68-1. It would essentially have the Court give its imprimatur to Plaintiffs' entire impression of their case and incorporate fact findings and characterizations which are patently unnecessary to certification and premature. *Cf. Chiang v. Veneman*, 46 V.I. 679, 698, 385 F.3d 256, 271 (3d Cir. 2004) ("class definitions must be free of merits allegations that require extensive factual findings").[3] The Court will, therefore, exercise its discretion to grant certification through its Order and in accordance with its analysis below, concluding that Plaintiffs have sufficiently alleged the existence of policies and procedures (a) regarding Defendant's treatment of mentally disabled inmates, (b) intended to be applied uniformly, (c) amenable to judicially manageable litigation and (d) remediable by sufficiently definable and implementable uniform relief.

## II. ANALYSIS

For a class to be certified, the identified group must meet each of the requirements of Federal Rule of Civil Procedure 23(a) and one of the three subsections of Rule 23(b).

### A. Rule 23(a)

The Supreme Court describes the Rule 23(a) requirements as follows:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality

---

[3] In *Chiang*, the Court concluded that defining a class with reference to those who "believed" they were discriminated against undermined the validity of the class by introducing a subjective and superfluous criterion into what should be an objective evaluation. The Court readily resolved the "red herring" objection by excising it from the class definition in this low-income loan national-origin discrimination action, and affirmed in part and vacated in part the certification. *Id.* at 261 ("Because the primary claim is that [class members] were discriminated against for being Virgin Islanders, a cognizable class, we will treat the claim as such and modify the District Court's certification . . . .").

> (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class').

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). As described below, the requirements under Rule 23(a) create a relatively low threshold of entry to discretionary certification adjudication.

### (1) Numerosity

Subsection 23(a)(1), while requiring that a class be "so numerous that joinder of all members is impracticable," requires no minimum number of members for a suit to proceed as a class action. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001). The Third Circuit has observed that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id*. Rule 23(a)(1) "requires examination of the specific facts of each case", and having done so, the Court finds this requirement clearly met. *See generally* ECF No. 69 and other pleadings of record.

### (2) Commonality

The commonality requirement of subsection 23(a)(2) is recognized as one easily met; *i.e.*, it will be satisfied if the named plaintiffs share at least *one* question of fact or law with the grievances of the prospective class, and "does not require identical claims or facts among class member[s]." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004), abrog. on other

grounds by *Hydrogen Peroxide*, 552 F.3d at 318 n. 18.[4]  *See also Dukes*, 131 S.Ct. at 2556; *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir.2009); *Chiang, supra* (holding that certification was not precluded by different process experiences/outcomes, such as loan receipt, where commonly applicable allegation was discriminatory policies and/or procedures);[5] *id.* ("In civil rights class action, class may not be defined by limiting its membership to those who were in fact discriminated against.").  As Plaintiffs fairly note:

> Commonality is established in this case. The proposed class members are all individuals who are currently incarcerated or will be incarcerated in the future at ACJ and who suffer from a serious mental health condition. They are all subject to the patterns, practices, or policies at ACJ and the unconstitutional conditions they create. They are also subject to the same threat of harm as a result of these patterns, practices, or policies, namely, the risk of increased psychological and/or physical harm as a consequence of receiving constitutionally inadequate mental health care.

ECF No. 69 at 37-38 (identifying multiple plausibly alleged common questions of fact or law, *e.g.*, rights violations caused by systemic deficiencies in (a) staffing and training, (b)

---

[4] *Chiang* was abrogated owing to its inclusion of an erroneous certification premise that substantive allegations are taken as true in that determination.  *See Chiang* 385 F.3d at 265 & n. 2

[5] The District Court had held, in certifying class of members injured by unlawful policies and/or procedures:

> The proper question . . . is whether the defendant treated the plaintiffs in a common fashion, not whether each plaintiff's factual circumstances were identical. As the Court of Appeals for the Third Circuit explained in *Baby Neal*, it is the defendant's conduct toward the plaintiffs that determines commonality. The finding of commonality in *Baby Neal*, a suit for declaratory and injunctive relief, was "based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." *Id* at 57. I find that the same rationale applies here. Defendant's common conduct toward all plaintiffs overwhelms whatever disparate effects that conduct may have had on individual plaintiffs and any differences in circumstances there may be among plaintiffs. It is clear from *Baby Neal* that class treatment of plaintiffs' claims is appropriate even if some individualized determinations may be necessary.

*Chiang v. Veneman*, 213 F.R.D. 256, 261 (D.V.I. 2003), aff'd in part, vacated in part, 46 V.I. 679, 385 F.3d 256 (3d Cir. 2004). *See also infra* n. 9.

access to and scope of mental health services and treatments, (c) facilities (*e.g.*, counseling/treatment spaces available) or (d) procedures (*e.g*, mental illness identification, documentation and treatment plans)). *Cf. Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), holding that:

> Common questions of law or fact existed, as element for class certification of state prisoners' Eighth Amendment claims seeking declaratory and injunctive relief against senior officials from Arizona Department of Corrections (ADC), relating to allegedly serious deficiencies in conditions of confinement in isolation cells, and in provision of privatized medical, dental, and mental health care services; prisoners were not merely aggregating many claims of individual mistreatment, and instead were alleging that ADC policies and practices of statewide and systemic application exposed all inmates in ADC custody to substantial risk of serious harm, to which the senior officials allegedly were deliberately indifferent, even if the risk might ultimately result in different future harm for different inmates.

**(3) Typicality**

Subsection 23(a)(3) requires that the claims of the representatives be typical of those of the class. The concepts of commonality and typicality are broadly defined and tend to merge since both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented.[6] However, despite their similarity, commonality and typicality are distinct requirements." *Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001).

Typicality derives its independent legal significance from its ability to "screen out class actions in which the legal or factual position of the representatives is markedly

---

[6] *Cf. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), as amended (Oct. 16, 2001) ("We have set a low threshold for satisfying both requirements.").

7

different from that of other members of the class even though common issues of law or fact are present." 7A Wright, § 1764. This comparative analysis addresses

> three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d at 599.[7] If a plaintiff's claim arises from the same event, practice or course of conduct (*e.g.*, policies or procedures) that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) (citing 1 Herbert B. Newberg, Newberg on Class Actions § 3.15 at 168 (2d ed. 1985)).  "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58 (citation omitted); *id.* ("Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold.").  See also *Stewart v. Abraham*, 275 F.3d 220, 227-28

---

[7] *See also Chiang v. Veneman*, 213 F.R.D. at 261:

> The Court of Appeals noted in *Baby Neal* that the typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees.

(3d Cir. 2001) (typicality inquiry of the class action rule centers on whether the interests of the named plaintiffs align with the interests of the absent members); *id.* at 228 (holding that claims that city's rearrest policy violated Fourth Amendment were typical of other potential §1983 class members since arrestee challenged policy, and constitutionality of that policy was at the heart of each of absent member's claims). Here, the Plaintiffs' claims arise from the same unlawful conduct that gives rise to the claims of the absent class members and are based on the same legal theories, *i.e.,* injury caused by Defendants' "systematic patterns, practices, or policies" such as "failing to adequately screen individuals for mental illness [or] failing to provide minimally adequate psychiatric and psychological services to individuals with mental illness . . . ." ECF No. 69 at 42.   Defendants' assertions regarding varying fact patterns, *e.g.*, Named Plaintiffs' periods of incarceration, do not undermine, and patently do not obstruct, this Court's finding of typicality under an appropriate analysis.

**(4) Adequacy of Representation**

Finally, subsection 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This involves a two-pronged test to ensure that the absentee plaintiffs' interests will be fully pursued: (1) that class counsel is qualified and will serve the interests of the entire class; and (2) that the interests of the named plaintiffs are sufficiently aligned with and not antagonistic to those of the class as a whole. *Georgine v. Amchem Prods., Inc.*, 83 F.3d at 630; *Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 286 (D.N.J.1997).  First, Plaintiff's counsel is clearly more than adequate to meet the complexities this lawsuit poses.  Second, as discussed under subsection 23(a)(3) above, and as Plaintiffs

note: "Plaintiffs' interests coincide with those of the proposed class to seek a declaration that the patterns, practices, or policies alleged in the Complaint are unconstitutional, as well as a permanent injunction prohibiting Defendants from further implementing such patterns, practices, or policies." ECF No. 69 at 44-45 (citing I*nmates of the Northumberland Cty. Prison*, 2009 U.S. Dist. LEXIS 126479, at *74–75 ("In fact, the interests of the remaining putative representatives are perfectly aligned with those of the putative class; namely, they wish to rectify the conditions at NCP so that current and future inmates are not subjected to deprivations of their constitutional rights while institutionalized at NCP.")); *id.* ("The granting of the relief sought by Plaintiffs would benefit the class members and would not impair any future class member's claims."). *Cf. Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 599 (3d Cir. 2012) (noting facts that might distinguish representative from other class members did not prejudice his ability to protect absent class members' interests fairly and adequately).

### (B) Rule 23(b)(2)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must demonstrate that the class would satisfy any one of the three subsections under Rule 23(b). *See Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)). Plaintiffs are asserting the appropriateness of certification under the injunctive class provisions of 23(b)(2). As the Third Circuit held in affirming certification in a constitutional challenge to arrest policies:

> Rule 23(b)(2) is designed primarily to authorize class action treatment for cases like the one before us that seek injunctive relief. See *Baby Neal*, 43 F.3d at 58. Moreover, it is generally recognized that civil rights actions seeking relief on behalf of classes like the putative class normally meet the requirements of Rule 23(b)(2). See *id.* at 59 ("[T]he injunctive class provision was 'designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons.'") (citations omitted). Finally, *Baby Neal* teaches that courts should look to whether "the relief sought by the named plaintiffs [will] benefit the entire class." *Id*. at 59. Here, Stewart seeks injunctive relief in a civil rights claim and the relief sought could benefit the entire class.

*Stewart,* 275 F.3d at 228.[8]  *See also* ECF No. 69 at 29 (noting that a 23(b)(2) class is "an especially appropriate vehicle for civil rights actions seeking . . . declaratory relief for prison . . . reform.") (citing *Hassine v. Jeffes*, 846 F.2d 169, 178 n.5 (3d Cir. 1988) (quoting *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980)).

Finally, with regard to *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154 (3d Cir. 2001), the Court notes the important distinctions between certification under

---

[8] *Cf. Chiang,* 385 F.3d at 261-62 (holding that claims of various practices effectuating discrimination alleged "a uniform course of conduct common to all class members subject to common proof in a single trial").  The District Court had premised its initial certification on 23(b)(3), predominance, noting that although 23(b)(2) certification may be "particularly well-suited to civil rights actions" where the defendant is acting/refusing to act on "grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate for the class as a whole", it is not proper where, as in *Chiang,* "the appropriate final relief relates . . . predominantly to money damages." *Chiang*, 213 F.R.D. at 263, n. 4. On appeal, the Third Circuit further observed, regarding money damages, that it questioned "the susceptibility of eligibility determinations to common proof", but that resolution lay with the District Court in the first instance. It continued, stating:

> We have no doubt, however, that the question of the existence [of unlawful (discriminatory) policies and/or procedures] is a matter appropriate for class determination. We will therefore affirm that portion of the District Court order certifying the class pursuant to Rule 23(c)(4), which allows a class action to be maintained with respect to particular issues – in this case the [policies and/or procedures] –while simultaneously reserving for the District Court the authority to determine whether eligibility for loans can be certified as a question suitable for class adjudication.

385 F.3d at 268.

11

Rule 23(b)(3) and 23(b)(2).  In *Newton*, the Third Circuit affirmed the District Court's denial of Plaintiff's requested 23(b)(3) predominance-based class certification of a Rule 10(b)-5 securities action for money damages. The Circuit first observed that predominance measures whether the class is sufficiently cohesive to warrant certification, and demands significantly more than commonality.  It then concluded that 23(b)(3)'s "twin requirements" of predominance and superiority were not satisfied by a putative class of investors where individual issues overwhelmed common questions (and created insurmountable management difficulties) and action would entail examining millions of individual trades, one by one, to determine actual injury.[9]  The case *sub judice* does not seek certification under a 23(b)(3) predominance and superiority analysis; it is a 23(b)(2) injunctive relief civil rights case. *Cf. Chiang*, *supra* n. 9.   And in response to Defendants' reliance on *Shook v. Board of County Commissioners of El Paso*, 543 F.3d 597 (10th Cir. 2008), the Court notes the Tenth Circuit's sentiment, in affirming the District Court's denial of certification - on grounds of managerial difficulties – of a class of inmates with mental health needs: "While we very well may have made a different decision had the issue been presented to us as an initial matter, and while other district courts perhaps could have chosen, or could choose, to certify similar classes, we cannot say the district court's assessment was beyond the pale."  This Court

---

[9] The Circuit rejected the District Court's conclusion that differences in circumstances between named representatives and class members undermined 23(a) typicality, noting that "[i]n fact, whether the class representatives' claims prove the claims of the entire class highlights important issues of individual reliance and damages that are more properly considered and relevant under the [23(b)] predominance and superiority analysis". *Id.* at 184 (citing securities cases in which typicality was met by claims founded in same defendant's conduct and same legal theories, and concluding cause of prospective class members' injuries remained typical).

chooses the path towards which the Tenth Circuit nods.  It does so in confidence that (a) to the extent manageability is an appropriate consideration under 23(b)(2)[10] - the action will not be unmanageable and (b) any relief warranted can be stated with reasonable specificity. *Cf. id.* (Tenth Circuit's observation that: "At the class certification stage, the injunctive relief sought by the class must be described in reasonably particular detail such that the court can at least conceive of an injunction that would describe in reasonable detail the acts required, so as to meet the specificity requirements of the rule governing injunctive relief.").

### III. CONCLUSION

For the reasons aforesaid, and pursuant to this Memorandum Opinion, the Court will grant Plaintiff's Motion for Class Certification by its Order of even date herewith

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

Date:  October 31, 2022

---

[10] In its second consideration of the case (on appeal from the District Court's denial of certification on remand), the Tenth Circuit reiterated that while "courts have disagreed over whether manageability, an explicit consideration under Rule 23(b)(3), may be considered in determining whether to certify a class pursuant to Rule 23(b)(2), we [previously] proceeded to hold that manageability is not categorically barred in Rule 23(b)(2) class certification decisions."  *Id.* at 602.

In support of its affirmance, the Circuit also noted that "Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification".  *Id.* (providing case citations to, *e.g*, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir.1998), discussing cohesion requirements in 23(b)(3) predominance class and in (b)(2) mass tort litigations, such as tobacco, seeking individual damages, and pervaded, the courts concluded, with individual issues).